IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

PAMELA HILLEY FENNELL                                                              PLAINTIFF

V.                                                          CIVIL ACTION NO.3:16CV-261-DAS

COMMISSIONER OF SOCIAL SECURITY                                           DEFENDANT

MEMORANDUM OPINON

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision by the Commissioner of the Social Security Administration. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The court, having reviewed the administrative record, the briefs of the parties, and the applicable law and having heard oral argument, finds as follows, to-wit:

STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405 (g.); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found

only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. The court must however, in spite of its limited role, "scrutinize the record in its entirety to determine the reasonableness of the decision ... and whether substantial evidence exists to support it." *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir. 1992). If the Commissioner's decision is supported by the evidence, then it is a conclusive and must be upheld. *Perales*, 402 U.S. at 390.

## BACKGROUND

Pamela Hilley Fennell, was fifty-nine years old at the time of her hearing in March 2015. She alleged onset of disability in 2008 and her date last insured was December 2013. She had a high school education and additional training as an x-ray technician and certified breath alcohol technician. She had past work experience as a physician's assistant and as a phlebotomist. At Step Two, the ALJ found that she suffers from degenerative lumbar disease and has undergone a lumbar laminectomy.

Dr. Barry Politi performed a consulting examination of Fennell on August 26, 2013. Politi noted that Fennell complained of pain on rotation and palpation of the spine but sat easily

for longer than 15-20 minutes. He noted that her gait was stiff but otherwise normal. Politi observed that she had no difficulty walking out to her car, bending and getting into the car, opening the door, and reaching for the seatbelt or driving wheel. His impression was lumbar spine surgery, low back pain, history of intracardiac ablation for supraventricular arrhythmia, right side shoulder surgery in the distant past, hypertension, chronic back pain, tobacco abuse, chronic bronchitis and chronic sinusitis. Politi stated there was some evidence of the plaintiff magnifying her symptoms. Based on his examination, Politi could not see why the claimant could not perform some type of work. He asked Fennell if she could do more sedentary or desk-type work, and reported that she said she could not. Politi did not provide a medical source statement regarding the plaintiff's function-by-function physical capacity.

The record also contains reports from two disability determination doctors. Dr. Hulett reviewed the records and concluded that the plaintiff could return to her former employment but did not address plaintiff's specific physical capacities. Dr. James found that Fennell could perform medium work with postural limitations. The ALJ found that the plaintiff could perform what she called a full range of light work, though she proceeded to limit the scope with occasional postural limitations, and a finding that Fennell could not climb ladders, ropes or scaffolding. There was no testimony from a vocational expert. The ALJ determined at Step Four that the plaintiff could return to her past work as a physician's assistant and as a phlebotomist and that she was, therefore, not disabled as of the date of the decision.

The plaintiff raised the following issues:

1. The ALJ's RFC finding is not supported by substantial evidence;

2. The ALJ violated Social Security Ruling 82-62 in finding that the plaintiff could return to her past relevant work;

3. The ALJ erred in assessing the plaintiff's credibility;

4. The ALJ erred in not discussing the plaintiff's husband's report; and

5. The ALJ failed to properly consider three MRI scan reports.

The court addresses each argument below.

### 1. SUBSTANTIAL EVIDENCE TO SUPPORT THE RFC

The plaintiff argues that the ALJ's finding that she could perform a full range of light work is not supported by substantial evidence. As noted above the only medical opinion setting forth the plaintiff's physical capacities, function-by-function, comes from one state disability determination physician. This doctor opined that Fennell could perform medium work with postural limitations. The other report, from Dr. Politi, the consultative examiner, discussed his review of her medical history, his findings on physical examination and his opinion that the plaintiff was magnifying her symptoms. He did not provide opinions on her functional capacities or limitations. He did opine that he saw "no reason why this woman, if she wanted to, would not be able to find some type of regular employment." His report references only sedentary work, specifically some type of "desk job."

The opinions of a non-examining physician do not rise to the level of "substantial evidence" to support an RFC determination, if contradicted by the opinion of a treating or examining source. The disability determination doctors are highly trained professionals, with extensive knowledge of the regulatory framework governing Social Security disability determinations. They provide invaluable early screening, which can lead to the quicker awards

4

of benefits for the terminally ill and those who are most clearly disabled. However, the fact that their opinions are given without the benefit of an examination and typically on less than the complete medical records, limits the value of their findings as a case proceeds to the hearing level.

After complete medical records are compiled and examining and/or treating doctors have weighed in on the claimant's condition, these early doctor's opinions may be fairly questioned as to their accuracy. Depending on the strength of the later adduced medical proof, it is sometimes legitimate to question whether these doctors would, if aware of the added information, adhere to or repudiate their earlier opinions. Thus, the Fifth Circuit Court of Appeals has held that the opinions of the disability determination doctors are not substantial evidence, as a matter of law, to support an ALJ's determination of a claimant's residual functional capacity, in the face of conflicting opinions from a treating or examining source. *Villa v Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The Commissioner argues the opinion of the disability determination doctor, James, does not conflict with the findings of consulting examiner, Politi, and his opinion is, therefore, substantial evidence to support the RFC finding. The court disagrees.

First, the court notes that the Commissioner routinely disregards any opinions of treating physicians that their patient is "disabled" or "completely unable to work." In its administrative decisions and on appeal, the Social Security Administration will always point out that the determination of whether a claimant is disabled is the Commissioner's responsibility. Physicians are not familiar with the legal standards nor are the vocational experts. So their opinions on disability are outside the scope of expertise of the treating physicians, and if conclusory, these

opinions do not aid the Commissioner in making the appropriate determination. The consulting examiner's conclusory statement in this case that Fennell is *not* disabled is likewise outside of the scope of his expertise and unenlightening. If a conclusory opinion favorable to a claimant does not support a finding of disability, such a conclusory opinion, unfavorable to a claimant, should not be found sufficient to support a denial of benefits.

Secondly, Politi's opinion on its face contradicts Dr. James' opinion. While Politi's report states he thinks this woman can work a regular job, he only references sedentary and desk type work. James' opinions find that the plaintiff can perform medium work. While there may be some question about the doctor's definition of sedentary work, nothing in his report squares with James' assessment at the medium level of exertion, nor for that matter with the ALJ's finding that the plaintiff is capable of light work.[1]

While it is the prerogative and duty of the ALJ to assess a claimant's residual functional capacity, that determination must be informed by expert medical evidence. *Villa*, 895 F.2d at 1023-24. There is no expert medical evidence to support the ALJ's determination. On this issue, the matter is to be remanded for further consideration. The defendant may either contact Politi to obtain a function-by-function report on the claimant's ability and/or order a new consultative examination.

## 2. PAST RELEVANT WORK AND SSR 82-62

The ALJ determined that Fennell could return to her past work as a phlebotomist and medical assistant. The plaintiff challenges this part of the decision arguing the ALJ violated the

---

[1] The court notes that the Commissioner has attempted to defend its RFC based on Politi's report, which is consistent with a sedentary level of exertion. The plaintiff argues that if she is restricted to sedentary work the Medical-Vocational guidelines would direct a finding of disabled.

mandates of Social Security Ruling 82-62, 1982 WL 31386 (S.S.A. 1982). This ruling recognizes that deciding if a claimant "retains the functional capacity to perform past relevant work ... has far-reaching implications and must be developed and explained fully in the disability decision." *Id.* at * 3. Because this is "important and, in some instances, ...[the] controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." *Id.* These decisions must provide specifics about the past work's demands and how those match with the claimant's remaining capacity for work in making a Step Four decision. SSR 82-62 at * 4. As with all decisions, the ALJ must articulate the rationale underlying the decisions made in evaluating a claim, to facilitate meaningful appellate review. *Hurst v. Secretary of Health & Human* Services, 753 F.2d 517, 519 (6th Cir. 1985). With Step Four determinations, an appellate court must be able to determine "how specific evidence leads to [the] conclusion," (SSR 82-62 at *4), that the plaintiff has the capacity to perform past work. The determination that a claimant may return to his or her past relevant work may be based on a finding that the claimant can perform their past jobs, as they have actually performed it in the past, or the determination may be made that they can return to the same occupation, as it is generally performed in the national economy. *Id.* at *3.

Social Security Ruling 82-62 requires three sequential steps in determining a claimant's capacity for past relevant work experience. First, there must be a "finding of fact of the individual's RFC." Second, there must then be a "finding of fact as to the physical and mental demands of the past job/occupation." Finally, there must be fact findings that "the individual's RFC would permit a return to his or her past job or occupation." *Id*. at *4.

The rule requires documentation of past work experience including "factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained *as appropriate*." *Id.* at *3. (Emphasis added).

The ALJ did assess Fennell's residual functional capacity, though the holding is somewhat confusing. The ALJ first proclaims that the plaintiff is capable of performing a full range of light work. She then added limitations, precluding the plaintiff from climbing ladders, ropes or scaffolds. She also found the plaintiff could only occasionally climb stairs or ramps, and could only occasionally balance, stoop, kneel, crouch or crawl.

The plaintiff argues that the ALJ failed to perform the second or third steps prescribed in the ruling. She argues the ALJ failed to develop sufficient factual information about the demands of Fennell's past work experience and, failed to make the required detailed findings to support the decision. The plaintiff argues that the decision made violates SSR 82-62 both as to how Fennell performed her past jobs and as to the manner these past occupations are generally performed. The court agrees.

The ALJ's findings at Step Four are perfunctory. She found:

> In the work history report, the claimant describes these occupations and earnings queries support substantial gainful activity level wages during the years she purported to perform them (Exhibit 4D, 5D, 6D, 5E). In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed.

The ALJ then references the opinion of a vocational examiner who opined that Fennell could return to her past job as a medical assistant, a job the ALJ correctly identified as being

performed at the light level of exertion. The ALJ then stated: "The occupation of phlebotomist is described in the Dictionary of Occupational Titles as sedentary." This statement is wrong. The D.O.T. describes the job as light. The ALJ concluded the Step Four determination by stating : "The undersigned has considered the claimant related she has difficulty with bending and the Dictionary of Occupational Titles shows that stooping is required only occasionally in the occupation of phlebotomist and is not present in the occupation of medical assistant."

The first sentence in the Step Four determination states that the ALJ had identified past relevant work experience. The second sentence states the ALJ's conclusion: The plaintiff can return to her past jobs as she performed them and to her past occupations as generally performed.

The first part of the determination--that she can perform her past jobs as actually performed--is already fatally flawed. The work history provided by the plaintiff at Exhibit 5E shows that her past work as a phlebotomist required her to assist in lifting patients on a daily basis and that she was required to lift up to fifty pounds, a lifting requirement, consistent with medium exertion, and inconsistent with the light RFC. The ALJ never mentions this conflict, nor is there any reference to contradictory statements from an employer or a vocational expert to contradict the plaintiff's description. Without an evidentiary basis for finding the plaintiff actually performed her past work at the light level of exertion, there is no evidence to support the ALJ's "as actually performed" decision.

The ALJ can alternatively find that the plaintiff can return to past relevant work, if she can perform the job, "as generally performed" in the national economy. The ALJ identifies the statement of the vocational examiner without discussion of her findings beyond the fact that the examiner opined Fennell could go back to her past work as a medical assistant. The ALJ made

9

no specific factual findings about this job nor did she attempt to match the job requirements to the plaintiff's RFC.

In identifying the phlebotomist job as sedentary the ALJ committed a fundamental factual error. The job is performed at the light level of exertion.[2] The court disagrees with the government's position that the error is inconsequential or harmless. In the last two sentences the ALJ, believing that she is assessing Fennell's capacity to return to a sedentary job addresses one of the postural limitations included in her RFC, the capacity to stoop.

It is true that ALJ's may refer to and rely upon the Dictionary of Occupational Titles for basic information about job descriptions, *Villa*, 895 F.2d at 1022. Such information might be adequate if the plaintiff's light work RFC had not contained added restrictions. However, the dictionary provides only limited information and does not substitute for expert vocational testimony. *Fields v. Bowen,* 805F.2d 1168, 1171 (5th Cir. 1986) (Because of the general nature of DOT job descriptions, the Dictionary of Occupational Titles is not an adequate substitute for

---

[2] The DOT description for this job is as follows:

**079.364-022 PHLEBOTOMIST (medical ser.)**

    Draws blood from patients or donors in hospital, blood bank, or similar facility for analysis or other medical purposes: Assembles equipment, such as tourniquet, needles, disposable containers for needles, blood collection devices, gauze, cotton, and alcohol on work tray, according to requirements for specified tests or procedures. Verifies or records identity of patient or donor and converses with patient or donor to allay fear of procedure. Applies tourniquet to arm, locates accessible vein, swabs puncture area with antiseptic, and inserts needle into vein to draw blood into collection tube or bag. Withdraws needle, applies treatment to puncture site, and labels and stores blood container for subsequent processing. May prick finger to draw blood. May conduct interviews, take vital signs, and draw and test blood samples to screen donors at blood bank.
*GOE: 02.04.02 STRENGTH: L GED: R3 M2 L3 SVP: 3 DLU: 88*

vocational expert testimony). While recognizing that the ALJ is not invariably required to use expert vocational testimony in every case in making the Step Four determinations, *Carey v Apfel*, 230F.3d 131 (5th Cir. 2000), this case demonstrates the hazards of an ALJ trying to proceed without such an expert.

Here the ALJ has recognized the vocational impact of at least one postural limitation, and has misidentified the exertional level and further, failed to identify an authoritative source on the impact of the postural limits within the RFC on the ability to perform the job. The DOT job description does not provide the necessary information. The ALJ asserted that only occasional stooping is required in work as a phlebotomist according to the DOT. Neither the description of the jobs of medical assistants or for phlebotomists in the DOT contain any reference to stooping or other postural limitations. The O*Net OnLine, a data base on occupations maintained by the U.S. Department of Labor, says that both phlebotomists and medical assistants are required to perform "physical activities that require considerable use of your arms and legs and moving your whole body, such as climbing, lifting, balancing, walking, stooping, and handling of materials.[3] This description provides no information that the court was able to locate that addressed the frequency of stooping required in these jobs. If the court cannot ascertain the information being relied on in the decision, it cannot follow the reasoning, nor effectively review the decision.

The ALJ has done little more than identify the exertional level for one job, and misidentify the exertional level for another job. The ALJ largely disregarded the postural limits in deciding the plaintiff's ability to return to her past employments, and when she did address one postural limitation, she did not identify a basis for her holding. In doing so, the ALJ

---

[3] ." https://www.onetonline.org/link/summary/31-9097.00 and 31-9092.00.

violated the provisions of SSR 82-62. On remand, any determination that the plaintiff is able to return to past relevant work must be made in accordance with SSR 82-62

### 3. DETERMINATION OF PLAINTIFF'S CREDIBILITY

The ALJ found that the plaintiff statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible. The plaintiff asserts this determination is not supported by substantial evidence and demonstrates that the ALJ cherry picked the evidence to support the decision denying benefits. When an ALJ must assess the claimant's credibility in determining the limiting effects of pain and other subjective symptoms, the determination is critical to the entire decision. An ALJ must, therefore, provide the specific reasons if finding that a claimant's testimony or other statements are less than credible.

This court in reviewing a credibility determination must, however, treat the ALJ's finding with great deference because the ALJ, having heard the testimony and observed the claimant's demeanor, is in the best position to evaluate the claimant's credibility. *James v. Bowen*, 793 F. 2d 702, 706 (5th Cir. 1986). Accordingly, the court will not upset the ALJ's credibility findings if there is substantial evidence to support those findings. See *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir. 1991); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). While the plaintiff has highlighted elements of the plaintiff's reported activities of daily living, which if accepted, would support a finding that she suffers from severe pain and substantial physical limitations, there is other evidence, including her self-reported ADLs which is not consistent with her claims and tends to undermine her credibility. Furthermore, Dr. Politi's opinion that the plaintiff was magnifying her symptoms supports the ALJ's findings that her reports of impairment are not consistent with the medical and other evidence of record. The ALJ's credibility decision is

supported by substantial evidence and is, therefore, affirmed.

## 4. FAILURE TO EVALUATE THE HUSBAND'S STATEMENT

The plaintiff's husband provided a functional report on his wife in which he confirmed plaintiff's reports of limitations in her daily activities. The plaintiff argues that the failure to address this statement is an indication of a failure to consider the report and a violation of SSR 06-03p. The referenced social security ruling provides that the ALJ should generally "explain the weight given" to other non-medical sources such as the husband's report, to provide subsequent reviewers with insight into the ALJ's reasoning. But this now--rescinded ruling acknowledges that there is a "distinction between what an adjudicator must consider and what the adjudicator must explain." The fact that the ALJ did not mention this statement does not mean that the ALJ did not consider it. In light of the ALJ's well-supported finding regarding the plaintiff's credibility, the court is not convinced that an error, if any, for failing to discuss the husband's statement was prejudicial to the plaintiff.

## 5. FAILURE TO CONSIDER/DISCUSS MRIs/EMGs

The plaintiff also argued that the ALJ erred in commenting on only one of three MRI's and misstating the findings of an EMG. The ALJ's decision states that a "February 2014 electromyography revealed no evidence of denervation in the lower extremities." This statement is incorrect. The EMG report found "both lower extremities show evidence of chronic denervation in the S1 nerve root muscles and right Vastus Lateralis muscle." The ALJ also mentioned a February 2014 MRI, that showed mild multilevel degenerative changes with no evidence of cord compression. The decision makes no mention of the other findings in the two additional MRIs from the same date. Without finding that the factual misstatement on the EMG

13

or failure to discuss all three MRIs is necessarily error or prejudicial error, given that the case must be remanded, the ALJ shall address the findings on the EMG and all three of the February 2014 MRIs.

The court finds that the Commisioner's decision is reversed and remanded for further proceedings consistent with the ruling of the court. A judgment consistent with this opinion will be entered.

SO ORDERED AND ADJUDGED this the ____ of October, 2017.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE